Scott A. Homar
Travis W. Koch
OVERSTREET, HOMAR & KUKER
Attorneys-at-Law
508 East Eighteenth Street
Cheyenne, Wyoming 82001
307.274-4444 telephone
307.274-4443 facsimile
www.ohklegal.com

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| EMILY QUALLEN, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ALBANY COUNTY SHERIFF'S DEPARTMENT, )<br>AARON GALLEGOS, CHRISTIAN HANDLEY, AND )<br>DOES 1-20 )<br>Defendant. ) | **Civil Action No. 20-CV-21J** |

## PLAINTIFF'S RESISTANCE AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

**COME NOW** Plaintiff, Emily Quallen (hereinafter "Plaintiff" or "Quallen"), by and through her attorneys Scott A. Homar and Travis W. Koch of OVERSTREET, HOMAR & KUKER, and hereby files PLAINTIFF'S RESISTANCE AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT filed by Albany County Sheriff's Department, Aaron Gallegos in his official capacity and Christian Handley in his official Capacity, and respectfully sets forth the following:

### Introduction

This is a civil-rights violation case arising out of Defendants' violation of the constitutional rights of a sexual assault survivor. Plaintiff Emily Quallen's *Complaint* seeks damages from all Defendants for damages under 42 U.S.C. § 1983. (*See generally* Doc 1). Plaintiff also seeks damages from Defendant Gallegos and Defendant Handley in their individual capacities. *Id*.

The Defendants have moved to dismiss Plaintiff's *Complaint* pursuant to Fed. R. Civ. P.

Rule 12(b)(6). (Doc 4). Defendants' motion should be denied because Plaintiff has sufficiently plead facts allowing the court to draw the reasonable inference that the Defendants are liable for the misconduct alleged.

## Standard

"[U]nder Rule 8, specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *S.E.C. v. Shields*, 744 F.3d 633, 641 (10th Cir. 2014) (*quoting Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012)). The Supreme Court explained that, to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A plaintiff must "nudge[ ] [her] claims across the line from conceivable to plausible." *Id*. Mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient. *Id*. at 555, 127 S.Ct. 1955.

The Supreme Court expanded upon this in *Ashcroft v. Iqbal*. There, examining the effect of a complaint's legal conclusions, the Court explained that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). As the Court noted, "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678–79, 129 S.Ct. 1937. The Court assumes the veracity of well-pleaded facts, but it must "then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679, 129 S.Ct. 1937. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. The Supreme Court has noted that under the federal rules, liberal discovery procedures and summary

2

judgment help "to define disputed facts and issues and to dispose of unmeritorious claims," while the "simplified notice pleading standard" merely represents the first step in a system "adopted to focus litigation on the merits of a claim." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

## Relevant Facts

These factual allegations come from Plaintiff's *Complaint*, and generally must be accepted as true for the purpose of this motion. *See Cty. of Santa Fe v. Pub. Serv. Co.*, 311 F.3d 1031, 1034 (10th Cir. 2002). However, some of these allegations come from a transcript attached to the *Complaint* and incorporated by reference. (Doc. 1 at 3 ¶ 8). This Court may consider the attached transcript when evaluating Plaintiff's complaint. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint."); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part thereof for all purposes").

Plaintiff reported to the Albany County Sheriff's Department that on the night of February 2, 2017 and into the morning of February 3, 2017, Quallen was sexually assaulted by a fellow ROTC cadet. (Doc. 1 at ¶ 5). On February 5, 2017, Lieutenant Colonel Haas ("Haas") became aware of Quallen's allegation of sexual assault and contacted the Albany County Sheriff's Department ("ACSD") to report the allegation. (*Id*. at ¶ 6).

Deputy Gallegos investigated Quallen's allegation. (*Id.* at 12). Deputy Gallegos and Sergeant Handley called Plaintiff in for a final interview. (*Id*. at ¶ 8.) During the interview, Gallegos and Handley's tactics became abusive to Plaintiff as they had decided their own version of events

3

and "told" Plaintiff what happened instead of listening to Plaintiff. (*Id.*). Defendants' conduct was motivated by Plaintiff's "sex, sexual orientation, and sexual identity," and constituted "purposeful discrimination." (*Id.* at ¶ 27). Plaintiff's sexuality factored into the investigation and determination. (*Id.* at ¶ 14). Additionally, the Defendants engaged in interrogation methods when questioning her about the alleged sexual assault with the goal to get a retraction of her sexual assault allegation and to "protect the accused's reputation." (*Id.* at ¶ 13).

After discounting Quallen's statements, which included an account of being physically held down by the perpetrator, the deputies again stated they would not prosecute her for false reporting if she recanted. (Id. at ¶ 12).

## Argument

### Municipal Liability

The Supreme Court has made clear that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "[I]n other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id*. at 691, 98 S.Ct. 2018. Instead, "the government as an entity" may only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id*. at 694, 98 S.Ct. 2018.

Thus, to establish municipal liability, a plaintiff must first demonstrate a "municipal policy or custom," which may take one of the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the

> basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks and brackets omitted). After establishing a municipal policy or custom, a plaintiff must demonstrate "a direct causal link between the policy or custom and the injury alleged." *Bryson*, 627 F.3d at 788 (internal quotation marks omitted).

With these legal standards in mind, Plaintiff's *Complaint* plausibly gives rise to entitlement of relief from ACSD, Deputy Gallegos, and Sergeant Handley in their official capacities. In this case, ACSD employees with final decision-making authority were involved in and approved the policy and custom that injured plaintiff.

### **COUNT I: 42 U.S.C. § 1983 Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits intentional sex discrimination, including selective or discriminatory enforcement of the law. *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996); *Estate of Macias v, Ihde*, 219 F.3d 1018, 1019,1028 (9th Cir, 2000) (in case alleging "inferior police protection on account of status as a woman, a Latina, and a victim of domestic violence, "holding that there is an equal protection right to have law enforcement services administered in a nondiscriminatory manner).). In addition to affirmative discrimination against members of protected groups, a failure to take action on behalf of these individuals can constitute unlawful discrimination. *See Bell v, Maryland*, 378 U.S, 226, 309 (1964) (Goldberg, J. concurring) ("[D]enying the equal protection of the laws includes the omission to protect.") (internal quotation marks omitted).

5

Law enforcement action violates the Fourteenth Amendment when a discriminatory purpose is a contributing factor; discrimination need not be the sole motivation for the discrimination to violate the Constitution. *Vill. Of Arlington Heights v. Metro, Hous, Dev. Corp*. 429 U.S. 252, 265-66 (1977). Recognizing that discriminatory purpose is rarely admitted or blatant, courts look to the totality of the circumstances to evaluate whether a law enforcement activity was motivated by discriminatory intent, and will consider factors that indirectly indicate an intent to discriminate, including evidence of discriminatory impact, evidence of departures from proper procedures, and contemporaneous statements by a decision maker or by responding officers. *See id*. at 265-68.

Differential treatment of women premised on sex-based stereotypes, such as stereotypes about the role women should play in society or how they should behave, also violates the Equal Protection Clause. *See, e.g., United States v. Virginia*, 518 U.S. 515, 517 (1996) (holding invalid explicit sex classification and stating that "generalizations about 'the way women are,' estimates of what is appropriate for most women, no longer justify denying opportunity to women[.]").Thus, where a law enforcement agency's failure to adequately respond to sexual assault is premised, at least in part, on sex-based stereotypes, that failure violates the Equal Protection Clause.[1]

In this case, there can be no doubt that Plaintiff plausibly plead differential treatment by Defendants based on sex-based stereotypes, such as stereotypes about the role women should play in society and how they should behave. Consider the following exchange from the "Interview"

---

1 In 2015, the Justice Department issued guidance in accordance with the case law, stating, "The Equal Protection Clause of the U.S. Constitution prohibits discriminatory enforcement of the law. Discriminatory policing occurs when police officers and departments selectively enforce the law—or fail to enforce the law—based on characteristics such as race, color, national origin, sex or religion. Denying police services to some persons or communities due to bias or stereotypes related to these characteristics is a form of discriminatory policing. *Identifying and Preventing Gender Bias in Law Enforcement Response to Sexual Assault and Domestic Violence*, U.S. DEP'T OF JUSTICE 3 (Dec. 15, 2015), http://www.justice.gov/opa/file/799476/download [https://perma.cc/994N-9CDH]

demonstrating Sergeant Handley's estimates of female abilities:

> **SERGEANT HANDLEY**: In what way? Again, this is one of those things you talked to Deputy Gallegos before, that it's pretty cut and dry now that you're -- you just said it was consensual, you went out there willfully, obviously. You were texting him. You were wanting to go out there. Whether you regret it or not at the time, I get that, but at the time you wanted to go out there. You went out there on your own accord.
> **MS. QUALLEN**: Yeah.
> **SERGEANT HANDLEY**: So I'm just curious as to how it wasn't consensual in the morning. Did he physically hold you down and tie you down and rape you; is that what you're saying?
> **MS. QUALLEN**: I mean, he held my arms down.
> **SERGEANT HANDLEY**: In a manner that was consistent with intercourse or a manner that was consistent with somebody raping you and forcibly having sex with you?
> **MS. QUALLEN**: I would not know. I don't normally have intercourse.
> **SERGEANT HANDLEY**: Okay. You're a grown adult. You can imagine that consensual intercourse is something that --

Similarly, Deputy Gallegos's opening monologue in the Interview is replete with sex-based generalizations. Over the course of his soliloquy, Deputy Gallegos lectured Plaintiff on what actually happened the night of the assault, how Plaintiff felt about it, and why Plaintiff reported it as rape. Doc 1, pg12 – 15 ("He went in for a kiss, You guys kissed. You liked it."; "Everything was good, consensual. . . . You guys went to sleep, woke up, had sex again, woke up in the morning and felt a little bad, said it's a weird one-night stand, awkward situation. You've never done this before. And this is maybe one of your first times with a man, and it was weird for you."; "Johnna came out as said you were raped by him. . . You went with it."; "She helped you in convincing you that you were raped by him."). It is not only plausible, it is clear that Sergeant Handley, Deputy Gallegos and ACSD failed to adequately respond to this sexual assault allegation, premised at least in part, on sex-based stereotypes. That failure violates the Equal Protection Clause.

In addition to the sex-based stereotypes espoused during the interview, the Defendants

conduct deviates from proper procedure. Recognizing that discriminatory purpose is rarely admitted or blatant, the *Arlington Heights* court instructed lower courts to look to the totality of the circumstances to evaluate whether a law enforcement activity was motivated by discriminatory intent, and to consider factors that indirectly indicate an intent to discriminate, including evidence of discriminatory impact, evidence of departures from proper procedures, and contemporaneous statements by a decision maker or by responding officers. *See Arlington Heights,* 429 U.S.at 265-68. As set forth in Plaintiff's *Complaint*, Sheriff O'Malley, the Albany County Sheriff met with and shared their full report and the video from the ACSD interview of Plaintiff with Haas. (Doc 1 at ¶18 – 21). Defendants' choice to share their investigation with Haas is a clear violation of Wyoming Statute § 6-2-319, which states:

> Prior to the filing of an information or indictment in district court charging a violation of an offense under this article, neither the names of the alleged actor or the victim of the charged offense nor any other information reasonably likely to disclose the identities of the parties shall be released or negligently allowed to be released to the public by any public employee except as authorized by the judge with jurisdiction over the criminal charges.

See W.S. § 6-2-319(a). Similarly, the Defendants disregarded the Wyoming Victim Bill of Rights by sharing their investigation with Haas. (Doc No. 1 at ¶ 22). In both cases, Defendants conduct represented a departure from proper procedure, which, in this case included Wyoming statutes, by all levels of ACSD. Defendants' conduct violates the Equal Protection Clause.

## COUNT II: 42 U.S.C. § 1983 Failure to Intervene

"[T]o be liable for failure to intervene, the officers must have 'observe[d] or ha[d] reason to know' of a constitutional violation and have had a 'realistic opportunity to intervene.' " *Jones*

*v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015). Additionally, "it is "clearly established" that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008).

In this case, Deputy Gallegos brought in his supervisor, Sergeant Handley to assist in the "Interview". (Doc 1 at pg. 12, ln. 4). Sergeant Handley was in the room, familiar with the investigation, and, despite his clearly established affirmative duty, failed to intervene despite the opportunity to intervene.

Like Sergeant Handley, Sheriff O'Malley failed to intervene. Sheriff O'Malley was aware of the investigation. (Doc. 1 at ¶¶ 18 -21). O'Malley was aware of the "Interview" and its constitutional violations. *See Id.* Still, O'Malley failed to intervene despite his affirmative duty and opportunity to do just that.

Based on the facts state in the *Complaint*, if true, Deputy Gallegos and his supervisor, Sergeant Handley violated Plaintiff's Equal Protection rights and ACSD should be liable for that violation because ACSD, through Sergeant Handley and Sheriff O'Malley, failed to intervene to stop the violation.

## COUNT III: 42 U.S.C. § 1983 COERCED CONFESSION

In their *Motion to Dismiss*, Defendants argue that "Plaintiff's *Complaint* does not identify the policy or practice, nor does the *Complaint* provide any reference to adoption by the ACSD of such a policy or practice" of the unjustified use of threatened prosecution to get alleged victims to retract their allegations. (Doc 4 at 9). Defendants argument imposes requirements beyond Supreme Court and Tenth Circuit precedent.

In the case where a plaintiff seeks to impose municipal liability on the basis of a single

9

incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–85, 106 S.Ct. 1292, 1300–01, 89 L.Ed.2d 452 (1986). As previously discussed, Sheriff O'Malley, the top-ranking person at ACSD, was involved with and familiar with the investigation. *Supra*. at 11. Not only was Sheriff O'Malley aware of the investigation, the interview, and their shortcomings, Sheriff O'Malley met with a third-party to discuss them. *Id*. Simply, the decision to violate Plaintiff's Equal Protection rights was made by Sheriff O'Malley, the individual with authority to make policy decisions on behalf of ACSD, making ACSD directly liable for Plaintiff's injuries.

## COUNT IV: FAILURE TO TRAIN

The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 412 (1989). "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989) (*quoting Pembaur v. Cincinnati*, 475 U.S. 469, 483–484, 106 S.Ct. 1292, 1300–1301, 89 L.Ed.2d 452 (1986). In short, failure to train claims under § 1983 only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392, 109 S. Ct. 1197, 1206, 103 L. Ed. 2d 412 (1989). Consistent with the *Twombly* and *Iqbal* requirements, the *Complaint* sets out facts showing it plausible that the Albany County Sheriff's Department's failure to train amounts to deliberate indifference.

Defendants also state that Plaintiff must "show that ACSD had actual or constructive notice that its action or failure to act [was[ substantially certain to result in a constitutional violation and consciously or deliberately "chose] to disregard the harm." (Doc No. 4 at 10). While that standard is accurate, it is incomplete. As the *Tenth Circuit* explained in the next sentence of the same opinion, "In a "narrow range of circumstances," however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a "highly predictable" or "plainly obvious" consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations." *Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998) (*citing Board of County Comm'rs v. Brown*, 520 U.S. 397, ——, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997)). Defendant's incomplete statement of the standard is not harmless.

In this case, Plaintiff has plead that "no or inadequate training related to sexual violence and trauma-informed investigations," the need for "more or different training" and the "failure to train" led directly to her constitutional rights being violated. (Doc. 1 ¶ 39 through 42). Here it is highly predictable and plainly obvious that ACSD's failure to train its officers in specific skill related to sexual violence and trauma-informed investigations presents an obvious potential for constitutional violations in a small city such as Laramie, WY that hosts a major university. As Sergeant Handley noted, "we do this every day." (Doc.1 at pg. 29, ln. 2-3). Thus, it is plausible that Defendants' failure to train its officers was substantially certain, or presented an obvious potential, for constitutional violations.

## Conclusion

A complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, at

11

679, 129 S.Ct. 1937. Plaintiff's *Complaint* satisfies this standard. As set forth above, Plaintiff has plausibly shown that ACSD' custom and policy caused Plaintiff's injuries. Further, Plaintiff plausibly plead facts demonstrating the violation of Plaintiff's Equal Protection rights.

Based upon the pleadings in this case and the foregoing argument, Plaintiff respectfully requests that this Court deny Defendants' *Motion to Dismiss* and for such other and further relief as the Court deems proper under the circumstances.

**DATED** this 1st day of April 2020.

                                            **EMILY QUALLEN,** *Plaintiff*

By: */s Scott A. Homar*
Scott A. Homar, #6-3092
Overstreet Homar & Kuker
Attorneys-at-Law
508 East Eighteenth Street
Cheyenne, Wyoming 82001
307.274.4444 telephone
307.274.4443 facsimile
www.ohklegal.com

**CERTIFICATE OF SERVICE**

I hereby certify the foregoing was filed using the Cm/ECF system on the 1st day of April 2020, and a copy of the foregoing document was sent to the following:

|  |  |
|---|---|
| Thomas A. Thompson<br>MacPherson & Thompson LLC<br>PO Box 999<br>616 W. Buffalo<br>Rawlins, WY 82301 | [√] CM-ECF |
| Jesse B. Naiman<br>Senior Assistant Attorney General<br>Wyoming Attorney General's Office<br>2320 Capitol Avenue<br>Cheyenne, WY 82002 | [√] CM-ECF |

*/s Scott A. Homar*
Scott A. Homar
OVERSTREET HOMAR & KUKER