

FILED
12:59 pm, 5/12/20
Margaret Botkins
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| EMILY QUALLEN, <br><br> Plaintiff, <br><br> vs. <br><br> ALBANY COUNTY SHERIFF'S DEPARTMENT, AARON GALLEGOS, CHRISTIAN HANDLEY, AND DOES 1-20, <br><br> Defendants. | Case No. 20-CV-00021 |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

This matter comes before the Court on Defendants' FED. R. CIV. P. 12(b)(6) Motion to Dismiss (ECF No. 3), Defendants' Memorandum in Support of FED. R. CIV. P. 12(b)(6) Motion to Dismiss (ECF No. 4), and Plaintiff's Resistance and Opposition to Defendants' Motion to Dismiss and Memorandum in Support (ECF No. 14). Defendants did not file a reply. This motion addresses Emily Quallen's allegations against Albany County Sheriff's Department (ACSD) and Aaron Gallegos and Christian Handley in their official capacities (collectively, Defendants). Having considered the filings, applicable law, and being otherwise fully advised, the Court hereby finds the Motion should be **GRANTED in PART** and **DENIED in PART**.

### Background

This is a civil rights case arising out of alleged constitutional rights violations during an investigation of a sexual assault. ECF No. 1. Plaintiff seeks damages under 42 U.S.C. § 1983. ECF No. 14 at 1. She attached a transcript of her final interview with Defendants to her

1

complaint. *Id.* at 3. The Court may consider the transcript when evaluating the complaint and treats it as part of the complaint. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); FED. R. CIV. P. 10(c).

At the time of the incident, Plaintiff was a cadet in the Reserve Officers' Training Corps (ROTC). ECF No. 1 at 2 ¶ 5. She alleges on the night of February 2, 2017, and into the morning of February 3, 2017, she was sexually assaulted by another ROTC cadet. ECF No. 1 at ¶ 5. On February 5, 2017, Lieutenant Colonel Haas (Lt. Haas) reported the sexual assault allegation to ACSD. *Id.* at ¶ 6.

Deputy Aaron Gallegos (Deputy Gallegos) investigated Plaintiff's allegation. *Id.* at 12. Deputy Gallegos and Sergeant Christian Handley (Sgt. Handley) conducted a final interview with Plaintiff. *Id.* at ¶ 8. During this interview, Defendants tactics became abusive as they decided on their own version of events and "told" her what happened, instead of listening to her. *Id.* at ¶ 8. She contends Defendants' conduct was motivated by her "sex, sexual orientation, and sexual identity," and constituted "purposeful discrimination." *Id.* at ¶ 27. Her sexuality factored into the investigation and determination. *Id.* at ¶ 14. She further alleges Defendants engaged in interrogation methods when questioning her about the alleged sexual assault with the goal of getting a retraction of her sexual assault allegation and to "protect the accused's reputation." *Id.* at ¶ 13. Defendants rejected Plaintiff's statements, including her assertion her attacker physically held her down; instead of listening, Defendants stated they would not prosecute Plaintiff for false reporting if she recanted. *Id.* at ¶ 12.

## Standard of Review

A pleading must be dismissed if it fails to plausibly state a claim for relief. FED. R. CIV. P. 12(b)(6). In *Ashcroft v. Iqbal*, the Supreme Court articulated a two-step approach for district

2

courts to use when considering a motion to dismiss under FED. R. CIV. P. 12(b)(6). *See* 556 U.S. 662, 679 (2009). First, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id. Iqbal* clarified that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The Court has stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility lies somewhere between possibility and probability; a complaint must establish more than a mere possibility that the defendant acted unlawfully but the complaint does not need to establish that the defendant probably acted unlawfully. *See id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## Discussion

### 1. Defendants' Motion

Defendants assert Plaintiff fails to establish a valid § 1983 claim against them. ECF No. 4 at 6. A local government may be liable under § 1983 if the agency subjects a person to a deprivation of rights or causes a person to be subjected to a deprivation of rights. *Id.* at 4 (citing

3

*Connick v. Thompson*, 563 U.S. 51, 60 (2011)). However, local governments are only responsible for their own illegal acts. *Id.* (citing *Connick*, 563 U.S. at 60). They are not vicariously liable for their employees' actions. *Id.* at 4-5 (citing *Connick*, 563 U.S. at 60; *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)). Local governments are only liable for the actions of their employees if constitutional or statutory violations resulted from a municipal policy or custom. *Id.* at 5 (citing *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993)).

Defendants contend there are three requirements to establish municipal liability under § 1983: (1) an official policy or custom, (2) a direct causal link between the policy or custom and the constitutional or statutory injury, and (3) the municipality defendant established the policy with deliberate indifference to an almost inevitable constitutional injury. *Id.* (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769-70 (10th Cir. 2013)). A governmental agency may be liable under § 1983 when its policy caused the constitutional deprivation, making it the wrongdoer. *Id.* (citing *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992)). Generally, a single incident of unconstitutional activity is insufficient to hold a municipality liable under § 1983. *Id.* (citing *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009)).

Defendants argue Plaintiff's claim for violation of Wyoming statutes is not a proper § 1983 claim. *Id.* at 6 (citing *West v. Atkins*, 487 U.S. 42 (1988)). Therefore, this claim must be dismissed. *Id.*

Plaintiff's other claims fall short of the § 1983 standard. *Id.* She must show she suffered the violation of a statutory or constitutional right. *Id.* (citing *Zuniga v. City of Midwest City*, 68 F. App'x 160, 162-63 (10th Cir. 2003) (unpublished)). She must also show the municipal policy or custom was the "moving force" of the violation. *Id.* (quoting *Zuniga*, 68 F. App'x at 162-63).

4

Plaintiff's complaint contains only conclusory allegations without demonstrating a municipal policy or custom was the moving force of a constitutional violation. *Id.* at 6-7.

As noted above, ACSD cannot be held liable under § 1983 solely based on injuries its deputies allegedly inflicted but requires a policy or custom. *Id.* at 7 (citing *Graves v. Thomas*, 450 F.3d 1215 (10th Cir. 2006)). For her equal protection claim, Plaintiff's complaint does not allege any facts supporting her claim of disparate treatment based on her sex, sexual orientation, or sexual identity. *Id.* More importantly, Plaintiff's complaint does not identify a municipal policy or custom that caused her alleged equal protection violation. *Id.* at 8.

Likewise, Plaintiff's failure to intervene claim does not allege a constitutional violation or identify a policy or custom that caused a violation. *Id.* Municipal liability under § 1983 attaches where an agency makes a deliberate choice to establish a policy or custom among various alternative options. *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). This can include a conscious decision not to act. *Id.* (citing *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 966 (7th Cir. 2019)).

Plaintiff's coerced confession allegation makes an unsupported claim ACSD had a policy and practice of the "unjustified use of threatened prosecution" to get victims to retract their allegations. *Id.* at 9. The complaint does not provide any specific facts, only conclusions. *Id.*

Finally, Defendants address Plaintiff's allegation of failure to train. *Id.* at 9-10. A municipality can be liable for failure to train but only upon proof of deliberate indifference. *Id.* at 10 (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)). Plaintiff is required to show (1) ACSD had actual or constructive knowledge its actions or failure to act was substantially certain to result in constitutional harm and (2) it consciously chose to disregard the risk of harm. *Id.* (citing *Barney*, 143 F.3d at 1307). She alleges ACSD had no or inadequate

5

training on sexual violence and trauma-focused investigations without any specific facts supporting those contentions. *Id.* Defendants conclude all of Plaintiff's claims should be dismissed for failing to state a claim upon which relief may be granted. *Id.*

**2. Plaintiff's Response**

Plaintiff argues Defendants' motion should be denied because she has sufficiently pled facts allowing the Court to draw the reasonable inference Defendants are liable for the misconduct alleged and not protected by qualified immunity. ECF No. 14 at 2. She agrees with Defendants that a local government can only be liable under § 1983 when the agency's policy or custom inflicted the injury. *Id.* at 4 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). A municipal policy may take one of the following forms: (1) a formal policy or regulation, (2) an informal, widespread practice, (3) decisions of employees with final policy making authority, (4) policymakers' ratification of decisions – and the basis for them – of subordinates to whom authority was delegated subject to the review and approval of decision makers, or (5) the failure to adequately train or supervise employees if that failure results from deliberate indifference to injuries that may be caused. *Id.* at 4-5 (citing *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010)). Once a plaintiff establishes a policy or custom, she must demonstrate a direct causal link between the policy or custom and the alleged injury. *Id.* at 5 (citing *Bryson*, 627 F.3d at 788). ACSD employees with final decision-making authority were involved in and approved of the policy and custom that injured plaintiff. *Id.*

**A. The Equal Protection Clause**

The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution prohibits intentional sex discrimination, including selective or discriminative enforcement of the law. ECF No. 14 at 5 (citing *Whren v. United States*, 517 U.S. 806, 813 (1996); *Estate of Macias*

*v. Ihde*, 219 F.3d 1018, 1019, 1028 (9th Cir. 2000)). In addition to affirmative discrimination against members of protected groups, a failure to act on behalf of those individuals can amount to unlawful discrimination. *Id.* (citing *Bell v. Maryland*, 378 U.S. 226, 309 (1964) (Goldberg, J. concurring)).

Law enforcement action violates the Equal Protection Clause when a discriminatory purpose is a contributing factor, even if it is not the sole motivation for the behavior. *Id.* at 6 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977)). A discriminatory purpose is rarely admitted or blatant, so courts look to the totality of the circumstances to evaluate whether law enforcement activity was motivated by discriminatory intent. *Id.* (citing *Arlington Heights*, 429 U.S. at 265-68). Courts will consider factors that indirectly show an intent to discriminate, including evidence of discriminatory impact, evidence of departures from proper procedures, and contemporaneous statements by a decision maker or by a responding officer. *Id.* (citing *Arlington Heights*, 429 U.S. at 265-68).

Differential treatment of women premised on sex-based stereotypes, such as stereotypes about the role women should play in society or how they should behave, also violates the Equal Protection Clause. *Id.* (citing *United States v. Virginia*, 518 U.S. 515, 517 (1996)). Where a law enforcement agency's failure to adequately respond to sexual assault is premised, at least in part, on sex-based stereotypes, that violates the Equal Protection Clause. *Id.*

Plaintiff asserts there can be no doubt she pled differential treatment by Defendants based on sex-based stereotypes. *Id.* at 7. She cites to the following portion of the interview transcript:

> **SERGEANT HANDLEY**: In what way? Again, this is one of those things you talked to Deputy Gallegos before, that it's pretty cut and dry now that you're -- you just said it was consensual, you went out there willfully, obviously. You were texting him. You were wanting to go out there. Whether you regret it or not at the time, I get that, but at the time you wanted to go out there. You went out there on your own accord.

7

> **MS. QUALLEN**: Yeah.
> **SERGEANT HANDLEY**: So I'm just curious as to how it wasn't consensual in the morning. Did he physically hold you down and tie you down and rape you; is that what you're saying?
> **MS. QUALLEN**: I mean, he held my arms down.
> **SERGEANT HANDLEY**: In a manner that was consistent with intercourse or a manner that was consistent with somebody raping you and forcibly having sex with you?
> **MS. QUALLEN**: I would not know. I don't normally have intercourse.
> **SERGEANT HANDLEY**: Okay. You're a grown adult. You can imagine that consensual intercourse is something that --

*Id.* at 7 (citing ECF No. 1 at 21-22).

Deputy Gallegos' opening monologue is rift with sex-based generalizations. *Id.* He lectured Plaintiff on what actually happened the night of the assault, how she felt about it, and why she reported it as rape:

> He went in for a kiss, You guys kissed. You liked it.
> . . .
> Everything was good, consensual.
> . . .
> You guys went to sleep, woke up, had sex again, woke up in the morning and felt a little bad, said it's a weird one-night stand, awkward situation. You've never done this before. And this is maybe one of your first times with a man, and it was weird for you.
> . . .
> Johnna came out and said you were raped by him. . . . You went with it.

*Id.* (citing ECF No. 1 at 12-15). It is not only plausible but clear Defendants failed to adequately respond to this sexual assault allegation, at least in part, due to sex-based stereotypes. *Id.* That failure violates the Equal Protection Clause. *Id.*

Defendants' conduct also deviated from proper police procedure. *Id.* at 7-8. As detailed in Plaintiff's complaint, Sheriff O'Malley[1] and the ACSD shared their full report and the video of the interview of Plaintiff with Lt. Col. Haas. *Id.* at 8 (citing ECF No. 1 at ¶¶ 18-21). Sharing this information was a clear violation of WYO. STAT. § 6-2-319, which states:

---

[1] No first name provided.

> Prior to the filing of an information or indictment in district court charging a violation of an offense under this article, neither the names of the alleged actor or the victim of the charged offense nor any other information reasonably likely to disclose the identities of the parties shall be released or negligently allowed to be released to the public by any public employee except as authorized by the judge with jurisdiction over the criminal charges.

*Id.* Defendants also disregarded the Wyoming Victim Bill of Rights, WYO. STAT. § 1-40-203, by sharing their investigation with Lt. Col. Haas. *Id.* (citing ECF No. 1 at ¶¶ 22-23). Defendants' conduct violates the Equal Protection Clause. *Id.*

### B. Failure to Intervene

Plaintiff plausibly pled her constitutional rights were violated, eliminating Defendants' contention her claim for failure to intervene fails because she did not show a violation. ECF No. 14 at 8-9. To be liable for failure to intervene, the officers must have observed or had reason to know of a constitutional violation with a realistic opportunity to intervene. *Id.* at 8 (citing *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015)). All law enforcement officials have a duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. *Id.* at 9 (citing *Vondrak v. City of Las Cruces,* 535 F.3d 1198, 1210 (10th Cir. 2008)). Deputy Gallegos brought his supervisor Sgt. Handley to assist in the interrogation. *Id.* (citing ECF No. 1 at 2). Sgt. Handley was in the room and familiar with the investigation but failed to intervene to stop constitutional violations. *Id.* Likewise Sheriff O'Malley was familiar with the investigation and also failed to intervene. *Id.* Deputy Gallegos and Sgt. Handley both violated Plaintiffs equal protection rights, and ACSD is liable for that violation because Sgt. Handley and Sheriff O'Malley failed to intervene. *Id.*

### C. Coerced Confession

In their motion, Defendants argue Plaintiff's complaint does not identify the policy or practice of the unjustified use of threatened prosecution to get alleged victims to retract their

allegations. ECF No. 14 at 9. This imposes a requirement beyond Supreme Court and Tenth Circuit precedent. *Id.*

Where a plaintiff seeks to impose municipal liability on the basis of a single incident, she must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the government entity being sued. *Id.* at 9-10. *Pembaur*, 475 U.S. at 483-85. Sheriff O'Malley, the top-ranking person at ACSD, was involved with and familiar with the investigation. *Id.* at 10. He discussed the investigation and interview with a third party and decided to violate Plaintiff's equal protection rights. *Id.*

**D. Failure to Train**

Inadequate police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Plaintiff agrees municipal liability under § 1983 attaches where a deliberate choice to follow a course of action is made from various alternatives. *Id.* at 10 (citing *Harris*, 489 U.S. at 389). The complaint sets out facts showing it is plausible ACSD's failure to train amounts to deliberate indifference. *Id.*

Plaintiff adds Defendants ignored part of the deliberate indifference standard. *Id.* at 11. The Tenth Circuit has held that in a narrow range of circumstances, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is "highly predictable" or a "plainly obvious" consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations. *Barney*, 143 F.3d at 1307-08.

Plaintiff has pled ACSD had "no or inadequate training related to sexual violence and trauma-informed investigations," the need for "more or different training" and the "failure to

10

train" led directly to her constitutional rights being violated. *Id.* (citing ECF No. 1 at ¶¶ 39-42). Here, it is highly predictable and plainly obvious ACSD's failure to train its officers in specific skills related to sexual violence and trauma-informed investigations presents an obvious potential for constitutional violations, particularly in a county where a major university is located. *Id.* Sgt. Handley stated during the interview, "we do this every day." *Id.* (citing ECF No. 1 at 29). If Defendants investigate sexual assaults every day in the same manner they handled Plaintiff's case, there is a high risk they will violate victims' constitutional rights. *See id.*

3. **Court's Analysis**

    A. **Municipal Liability Under § 1983**

42 U.S.C. 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

A suit against public servants in their official capacity imposes liability on the entity they represent; it is another way of pleading an action against the entity. *Hinton*, 997 F.2d at 783. Here, the claims against Deputy Gallegos and Sgt. Handley in their official capacities are simply claims against ACSD.

ACSD may only be liable under 42 U.S.C. § 1983 for its own unconstitutional or illegal policies or customs, not for the tortious acts of its employees. *Barney*, 143 F.3d at 1307. This Court previously found Deputy Gallegos and Sgt. Handley were entitled to qualified immunity. ECF No. 17. However, "a finding of qualified immunity does not shelter a municipality from liability." *Hinton*, 997 F.2d at 782. To establish municipal liability, a plaintiff must show:

> 1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged. When the claim is a failure to act, the

plaintiff must demonstrate the municipality's inaction was the result of deliberate indifference to the rights of its inhabitants. In addition, a municipality may not be held liable where there was no underlying constitutional violation by any of its officers.

*Graves*, 450 F.3d at 1218 (internal citations and quotation marks omitted).

> A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson*, 627 F.3d at 788 (internal quotation marks and alterations removed).

Plaintiff does not provide a formal policy but contends Defendants have a custom of threatening to prosecute sexual assault victims unless they recant. She claims Sheriff O'Malley authorized Deputy Gallegos and Sgt. Handley to violate her equal protection rights because he was aware of the violations and failed to intervene. ECF No. 14 at 9. By failing to intervene and standing by while violations occurred, Sheriff O'Malley effectively ratified the actions. *Id.* Additionally, Sgt. Handley is Deputy Gallegos' supervisor and failed to intervene when Deputy Gallegos violated Plaintiff's right to equal protection. *Id.* Accepting as true all the facts asserted by Plaintiff, these claims meet the standard of pleading required by *Iqbal. Iqbal* at 678. She does not plead mere conclusions but attaches for the Court's consideration the entire interview transcript to demonstrate the plausibility of her claims. *Id.* The Court finds Plaintiff sufficiently pleaded facts to support her claim that there was an informal policy through decision making or ratification of actions which violated her constitutional rights. *See generally* ECF No. 1.

Municipal liability based on inadequate training requires proof of deliberate indifference. *Barney*, 143 F.3d at 1307. The failure to train must "reflect a deliberate or conscious choice by a

municipality." *Id.* (internal quotation marks and alteration removed). The deliberate indifference standard is met when the municipality has actual or constructive notice its action or failure to act is "substantially certain" to result in a constitutional violation, yet it consciously or deliberately chooses to disregard the risk of harm. *Id.*

In determining a local government's liability, the focus must be "on [the] adequacy of the training program in relation to the tasks the particular officers must perform." *Harris*, 489 U.S. at 390. Just because an officer was poorly trained is not enough to hold the municipality liable because the officer's shortcomings could have been caused by something else. *Id.* at 390-91. It is possible a sound training program is negligently administered, or an otherwise adequately trained officer makes a mistake. *Id.* at 391. Importantly, the deficient training must cause the injury. *Id.*

Here, it is plausible Defendants were deliberately indifferent. Sgt. Handley lets Deputy Gallegos, his subordinate, question Plaintiff on her sexual orientation. *See generally* ECF No. 1. And he does so himself. *See generally id.* Plaintiff alleges Sheriff O'Malley was also complicit by failing to intervene during or after the interview; he was aware of the interview and let it proceed as conducted. *See generally id.*; *see also* ECF No. 14 at 9.

### B. The Equal Protection Clause

> The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike.

*Cleburne*, 473 U.S. at 439 (internal quotation marks omitted). In pleading an equal protection claim, a plaintiff must allege differential treatment by defendants. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998). Plaintiff has done so with the transcript, which suggests ACSD may treat lesbian women claiming sexual assault differently from straight women claiming sexual assault. *See generally* ECF No. 1.

13

Equal protection does not guarantee equal results or that the law will not draw distinctions between people in similar situations. *Secsys, LLC v. Vigil*, 666 F.3d 678, 684 (10th Cir. 2012). The Equal Protection Clause recognizes all people are equal. *Id.* Its purpose is to ensure those who appear similarly situated are not treated differently without at least a rational reason for the difference. *Id.*

> Often, an equal protection plaintiff will be able to show intentional discrimination only by circumstantial evidence, usually in the form of an inference of discrimination arising from the fact that his or her adverse treatment was such a stark outlier from an otherwise consistent pattern of favorable treatment in similarly situated cases.

*Id.* at 689.

It is unclear what discovery will reveal, but Plaintiff has shown it is plausible she was treated differently based on her sex or sexual orientation. It is inconceivable Defendants would tell a straight woman that it must be weird being with a man. ECF No. 1 at 13. Sgt. Handley is quite colorful when Plaintiff says she does not normally have intercourse. *Id.* at 12. The transcript is rife with sex-based generalizations. *See generally id.* Plaintiff may very well have not been treated similarly to straight women claiming sexual assault. At this stage, all she needs to plead is disparate treatment was plausibly based on the facts she submits. The Court finds she has.

However, not all of Plaintiff's claims may proceed. Her claim Defendants violated Wyoming law is not a proper § 1983 claim. Section 1983 does not provide a basis for addressing violations of state law. *Jones v. City & Cty. of Denver, Colo.*, 854 F.2d 1206, 1209 (10th Cir. 1988). This claim must be dismissed for failure to state a claim upon which relief may be granted. Additionally, Plaintiff's coerced confession claim appears to be another way of her claiming her equal protection rights were violated. She has not plausibly pled Defendants violated something other than her equal protection rights by forcing her to recant her sexual assault allegation. The coerced confession claim is also dismissed for failing to state a claim.

## Conclusion

It is **HEREBY ORDERED** Defendants' FED. R. CIV. P. 12(b)(6) Motion to Dismiss (ECF No. 3) is **GRANTED in PART** and **DENIED in PART**.

Dated this 12th day of May, 2020.

_____
Alan B. Johnson
United States District Judge